133 P.3d 1240

Philip H. FENN, Plaintiff–
Counterdefendant–
Appellant,

v.

Randy E. NOAH and Kathryn A. Noah, husband and wife, Defendants–Counterclaimants–Respondents.

Randy E. Noah and Kathryn A. Noah, husband and wife, Third Party Plaintiffs–Respondents,

v.

Rea Lynn M. Fenn, deceased and the known and unknown heirs and devisees of Rea Lynn M. Fenn, Third Party Defendants–Appellants.

No. 31433.

Supreme Court of Idaho, Boise, February 2006 Term.

April 11, 2006.

Walker Law Office, Weiser, for appellants. Lary C. Walker argued.

R. Brad Masingill, Weiser; Anderson, Julian & Hull, Boise, for respondents. Robert A. Anderson argued.

BURDICK, Justice.

This case arises out of the purchase of real property in Cambridge, Idaho. Appellant Philip Fenn (Fenn) purchased five acres of land once owned by Respondents Randy and Kathryn Noah (the Noahs) by assuming a land sale contract between the Noahs and Fenn's predecessor in interest, Glenn N. Kline (Kline). Fenn brought suit against the Noahs for allegedly violating the Idaho Consumer Protection Act, constructive fraud, and breach of contract. These claims arise from a survey performed for the Noahs which revealed that the legal description of the property did not match the fence lines partially surrounding the property. Fenn appeals from a decision granting summary judgment to the Noahs. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kline purchased five acres of real property from the Noahs. This piece of property is surrounded on three sides by property the Noahs still own. It is bordered on the west side by a neighbor's property. The property also contained an existing home and outbuildings, irrigation ditches and fences. These fences did not completely surround the property.

The contract between Kline and the Noahs provided a metes and bounds description of the property. It also provided that Kline would make payments for the land directly to the Noahs and in the event of a default in

payments provided the Noahs the right to foreclose. Kline subsequently sold this property to Fenn and his now-deceased wife, Rea Lynn. Fenn assumed the contract between Kline and the Noahs. Fenn did not speak to and had no contact with the Noahs prior to purchasing the property from Kline.

Desiring to level their remaining land for irrigation purposes, the Noahs had a survey performed nearly five years after Fenn purchased the property from Kline. The survey revealed that the legal description of the property did not match the fence lines partially surrounding the property. The Noahs informed Fenn and Fenn's neighbors on the west, Mike and Janet Fox, that the survey revealed the boundaries of Fenn's property did not correspond to the fence lines. The surveyed boundary was inside the fence five or six feet on the east side, thirty feet outside the fence on the west side and more than forty feet outside the assumed boundary on the north side. The Foxes refused to recognize the boundaries as revealed by the survey, and their attorney sent a letter to Fenn "advising" him that the west fence was an established boundary.

The Noahs attempted to appease the situation and offered Fenn additional land on the south side of his property. Fenn never accepted the offer. However, the Noahs removed the east fence, just outside of Fenn's property and leveled their fields up to the boundaries revealed by the survey. This leveling destroyed an existing irrigation ditch running parallel to the east fence line and lowered the land surrounding Fenn's property by two to three feet. Fenn did not object to these actions. Months after the leveling, Fenn stopped making payments to the Noahs and filed suit against them alleging violations of the Idaho Consumer Protection Act; he later amended his complaint to include constructive fraud and breach of contract claims. The Noahs counterclaimed and brought a foreclosure action against Fenn pursuant to the terms of the contract. The district court granted the Noahs' third motion for summary judgment. After this decision, the parties stipulated to enter foreclosure in favor of the Noahs; Fenn renounced any interest in the property and returned it to the Noahs.

This case comes to the Court on Fenn's timely appeal of the order granting summary judgment to the Noahs.

## II. ISSUES ON APPEAL

1. Is Fenn's appeal moot?
2. Did the district court err in granting summary judgment to the Noahs?
3. Is either party entitled to attorney's fees on appeal?

## III. STANDARD OF REVIEW

The standard of review on appeal from an order granting summary judgment is the same standard as that used by the district court in ruling on the motion for summary judgment. *Tolley v. THI Co.*, 140 Idaho 253, 259, 92 P.3d 503, 509 (2004). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; I.R.C.P. 56(c). The facts will be liberally construed and all inferences will be drawn in favor of the non-moving party. *Id.* This Court reviews the record before the district court, including the pleadings, depositions, admissions and affidavits, if any, to determine de novo whether, after construing the facts in the light most favorable to the nonmoving party, there exists any genuine issues of material fact. *Tusch Enters. v. Coffin*, 113 Idaho 37, 40, 740 P.2d 1022, 1026 (1987); I.R.C.P. 56(c).

## IV. ANALYSIS

Fenn argues the district court erred in granting the Noahs' motion for summary judgment because he raised genuine issues of material fact for each of his claims. The Noahs contend that the district court was correct in granting their motion for summary judgment and argue that Fenn's appeal is moot. We will first examine whether this appeal is moot and then turn to the question of whether the district court erred in granting summary judgment against Fenn.

### A. Mootness

The Noahs contend that Fenn's appeal is moot because he defaulted on the

contract and renounced any claim he has to the property. They argue that by waiving his right to the property he waived "any and all of his available remedies" so the case is moot. Fenn asserts he has not waived his claim for damages for the Noahs' alleged violations of the Idaho Consumer Protection Act, constructive fraud or breach of contract; therefore, Fenn continues, his appeal is not moot.

"An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded through judicial decree of specific relief." *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851, 119 P.3d 624, 626 (2005). Mootness applies when an appellant lacks a legal interest in the outcome. *State v. Hoyle*, 140 Idaho 679, 682, 99 P.3d 1069, 1072 (2004) (citing *Murphy v. Hunt*, 455 U.S. 478, 481–82, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353, 356–57 (1982); *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991)). Mootness also applies when a favorable judicial decision would not result in any relief. *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004). This Court may only review cases in which a judicial determination will have a practical effect on the outcome. *Hoyle*, 140 Idaho at 682, 99 P.3d at 1072 (quoting *Idaho Sch. For Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 281, 912 P.2d 644, 649 (1996)).

Here, Fenn can claim statutory damages under the Idaho Consumer Protection Act (ICPA). Idaho Code § 48–608(1) provides:

Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this act, may treat any agreement incident thereto as voidable or, in the alternative, may bring an action to recover actual damages or one thousand dollars ($1,000), whichever is the greater; provided, however, that in the case of a class action, the class may bring an action for actual damages or a total for the class that may not exceed one thousand dollars ($1,000), whichever is the

greater. Any such person or class may also seek restitution, an order enjoining the use or employment of methods, acts or practices declared unlawful under this chapter and any other appropriate relief which the court in its discretion may deem just and necessary. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper in cases of repeated or flagrant violations.

Once a violation of the ICPA is found, it is error to not award statutory damages. *See White v. Mock*, 140 Idaho 882, 889–90, 104 P.3d 356, 363–64 (2004) ("Having determined that the Mocks had engaged in an act or practice which was misleading, false, or deceptive to White, in violation of the [ICPA], the jury was required to make an award of at least one thousand dollars to White."). Therefore, since a favorable judicial determination would have a practical effect on the outcome of this case we find Fenn's appeal is not moot as to this ICPA claim.

However, a favorable judicial determination would have no practical effect on the remainder of Fenn's claims. Since Fenn has renounced his interest in the property, no decision by this Court as to his constructive fraud or breach of contract claims would afford him any relief. Therefore, we hold the Fenn's breach of contract and constructive fraud claims are moot, and we will not address them.

## B. Summary Judgment

Fenn claims that the Noahs violated the ICPA two ways. First by misrepresenting the property in the land sale contract and second by failing to correct the problems the survey revealed in the manner they offered. The Noahs assert the district court correctly granted them summary judgment because Fenn failed to raise a genuine issue of material fact that they had violated the ICPA.

The purpose of the ICPA is "to protect both consumers and businesses against unfair methods of competition and unfair and deceptive practices in the conduct of trade or commerce, and to provide efficient and economical procedures to secure such protec-

tion." I.C. § 48–601; *White,* 140 Idaho at 890, 104 P.3d at 364. The ICPA should be construed liberally. *In re W. Acceptance Corp.,* 117 Idaho 399, 401, 788 P.2d 214, 216 (1990). Idaho Code § 48–603 contains a knowledge element and an enumeration of unfair or deceptive acts or practices in the conduct of trade which our legislature has declared unlawful. The real property at issue is clearly within the definition of "goods." *See* I.C. § 48–602(6); *see also White,* 140 Idaho at 890, 104 P.3d at 364. A consumer who purchases goods and suffers a loss as a result of an act unlawful under the ICPA may treat the agreement as voidable or seek damages. I.C. § 48–608(1). Therefore, in order to have survived the Noahs' motion for summary judgment, Fenn needed to raise a genuine issue of material fact as to whether a representation by the Noahs was an unfair or deceptive act as enumerated in the ICPA.

Here, the district court concluded that Fenn had failed to raise a genuine issue of material fact on his consumer protection claim because Fenn had no contact with the Noahs prior to closing on the property, and the ICPA requires the Noahs to have acted in an unlawful manner towards Fenn personally. A review of the record confirms that there was no contact between Fenn and the Noahs prior to closing. Fenn does not dispute that there were no contacts prior to closing, but instead insists the description in the land sale contract between Kline and the Noahs is an actionable misrepresentation.

Fenn's argument is premised on the idea that the metes and bounds description in the land sale contract was a misrepresentation. Fenn argues the difference between the metes and bounds description in the contract and his warranty deed and the "property actually transferred" constitutes a misrepresentation because the metes and bounds description did not match the real property he "received." Fenn contends his affidavits show he "received" property different from that described, so he has raised a genuine issue of material fact as to each of his claims and granting summary judgment to the Noahs was error.

■ In essence, Fenn is asking this Court to disregard the legal effect of his taking title to real property and instead look to his assumptions about what he possessed when examining each of his claims. However, under Idaho law Fenn took title to the property described in the deed, not the property he believed he possessed. Idaho law presumes the holder of title to property is the legal owner of that property and this presumption can only be overcome by meeting the elements of certain recognized exceptions. *Luce v. Marble,* 142 Idaho 264, 270, 127 P.3d 167, 173 (2005) (citing *Hettinga v. Sybrandy,* 126 Idaho 467, 469, 886 P.2d 772, 774 (1994); *Russ Ballard v. Lava Hot Springs Resort, Inc.,* 97 Idaho 572, 579, 548 P.2d 72, 79 (1976)). Fenn's assumption that he "received" property only within the fence lines does not change the way real property law in Idaho functions. Fenn became the legal owner of the property described by metes and bounds in the deed regardless of whether he believed the fence lines matched that description and regardless of whether he believed he was the owner.

Therefore, while Fenn may have honestly assumed that he owned only the property within the fence lines, as a matter of law he took title to the property described in the deed, and we must presume he is the legal owner of that property. Any testimony that he did not own or "receive" this property fails to raise a genuine issue of material fact as to the land he actually owned and to which he took title. As such, his ICPA claim, premised on the assumption that the metes and bounds description in the land sale contract was a misrepresentation, must fail.

■ Finally, Fenn also claims the Noahs' represented after the survey that they would take action to correct problems and their failure to do so is unlawful under Idaho Code § 48–603(4), (5), (7), (9), and (17). Even if the Noahs misrepresented their intended course of action, such would not be unlawful under that section because Idaho Code § 48–603 makes the enumerated acts unlawful "in the conduct of any trade or commerce." In turn, Idaho Code § 48–602 defines trade and commerce as "advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services or distributing goods or services...." The Noahs were doing none of

these enumerated acts when they discussed the survey and extended an offer to Fenn. As such, their offer or promises are not a violation of the ICPA.

Since, as discussed above, Fenn took title to the property as it was described in the land sale contract, and since the Noahs' representations about correcting any "problems" revealed by the survey are not unlawful under the ICPA, we affirm the district court's grant of summary judgment for Noah on Fenn's IPCA claims.

## C. Attorney Fees

Fenn requests attorney's fees pursuant to the terms of the contract, I.C. §§ 12–120 and 12–121, and I.C. § 48–608(4). The contract and statutory provisions cited by Fenn all allow the award of attorney's fees only to the prevailing party. Since we affirm the court below, Fenn is not the prevailing party and, therefore, not entitled to attorney's fees.

The Noahs request attorney's fees pursuant to I.C. § 12–121, but not pursuant to the contract. This Court may award attorney's fees under Idaho Code § 12–121 "if the Court finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Gallagher v. State*, 141 Idaho 665, 669, 115 P.3d 756, 760 (2005). Here, Fenn pursued his appeal frivolously, unreasonably and without foundation. Therefore, we award the Noahs attorney's fees on appeal.

## V. CONCLUSION

Since Fenn would have the right under the ICPA to collect statutory damages his appeal is not moot. There is no actionable misrepresentation under the ICPA because there was no difference between what Fenn received and the metes and bounds description in the contract. Therefore, we affirm the decision below. Attorney's fees and costs to Respondent.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.