# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 52222

SARA NICOLE BYBEE, )
                                )
            Petitioner-Respondent, )
                                )
v. )
                                )
AUSTIN NIKOLAS LOFTUS, )
                                )
            Respondent-Appellant. )
                                )

Filed: October 1, 2025

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Lemhi County. Hon. Stevan H. Thompson, District Judge. Hon. Andrew R. Woolf, Magistrate.

Memorandum decision of the district court, on intermediate appeal, <u>affirmed in part</u>, <u>reversed in part</u>, and <u>case remanded</u>.

Murray Ziel & Johnston, PLLC; Alan Johnston, Idaho Falls, for appellant. Alan Johnston argued.

Smith Woolf Anderson & Wilkinson, PLLC; Aaron J. Woolf, Idaho Falls, for respondent. Aaron J. Woolf argued.

---

HUSKEY, Judge

Austin Nikolas Loftus appeals from the district court's memorandum decision, on intermediate appeal, arguing the district court erred in affirming the magistrate court's first amended judgment regarding the child custody visitation schedule and support order. Sara Nicole Bybee argues the district court did not err. For the reasons set forth below, we affirm in part, and reverse in part, the district court's memorandum decision and remand the case to the magistrate court for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Bybee and Loftus were never married but are the biological parents of the minor child, I.L., born in 2020. Loftus has sole legal and physical custody of his two other children from a previous marriage. I.L. was born in and resided in Kennewick, Washington with Bybee, Loftus, and the

1

other two children from the time of I.L.'s birth until she was approximately three months old, at which point Bybee took I.L. to Salmon, Idaho for an extended stay. Bybee and I.L. returned to Washington and lived with Loftus and the two other children for approximately four months. At that time, Bybee and I.L. returned to Salmon, where they have since continuously resided.

Loftus filed a petition for custody in Washington and Bybee filed a petition for custody in Idaho, including a request to modify the child support order that had been entered in Washington.[1] In order to have regular contact with I.L., Loftus withdrew his petition in Washington, and moved with his two children to Idaho Falls in February 2022. At that time, the magistrate court entered temporary orders regarding visitation and required all visitation to occur in Salmon. Although Loftus had limited contact with I.L. while Loftus resided in Washington, once he relocated to Idaho, he exercised all his visits as set forth in the temporary order.

A trial was held, and the magistrate court took the matter under advisement and then issued its findings at a subsequent hearing. The magistrate court awarded the parties joint physical and legal custody, with Bybee having primary physical custody, and entered a visitation schedule. The schedule designated two different time periods: the time until I.L. entered kindergarten and the time after I.L. entered kindergarten in the fall of 2025.[2] Prior to I.L. beginning kindergarten, Loftus was awarded every other weekend, from Friday at 12:00 p.m. until Sunday at 12:00 p.m. with the first visit of the month to take place in Salmon and the second to take place in Idaho Falls. After I.L. entered kindergarten, Loftus's visitation schedule is the same, but all the visits take place in Idaho Falls. The magistrate court's oral pronouncement indicated that the "holiday schedule would be a standard alternating holiday schedule, including Easter, Halloween, July 4th, the week of Thanksgiving," and six days for each party during the Christmas break. The written judgment awarded Loftus visitation on Easter, Father's Day, July 4th, Halloween, Thanksgiving, and Christmas. The magistrate court then noted Loftus's income and Bybee's voluntary underemployment, and imputed to Bybee an income consistent with full-time, minimum wage employment for child support calculations. The magistrate court also ordered Loftus to pay a portion of Bybee's attorney fees based solely on the income differential between the parties.

---

[1]     A notice and finding of financial responsibility was entered in Washington, requiring Loftus to pay child support for I.L. in the amount of $683.00 per month. In that order, the State of Washington imputed an income of $2,080.00 per month to Bybee.

[2]     The parties agree that I.L. is now in kindergarten.

Both parties filed motions for reconsideration. Loftus argued that his visitation should begin on Thursday evenings because he got off work at approximately 5:00 p.m. on Thursdays and did not work on Fridays and thus, there was no reason his visitation could not begin Thursday evenings instead of Fridays at 12:00 p.m. He also requested that all his visitation, both before and after I.L. entered kindergarten, take place at his home in Idaho Falls. Loftus additionally asked that all federal holidays be included in the visitation schedule and that the magistrate court impute to Bybee her historical wage of $12.00 per hour. Finally, Loftus asked the magistrate court to reconsider the award of a portion of Bybee's attorney fees. Bybee's motion for reconsideration requested that the child support obligation be backdated to the filing of the petition and be subject to automatic wage withholding, that any person with a valid driver's license be permitted to transport I.L. for visitation exchanges, and that a specific smart phone application be required for the parties' communications. The magistrate court denied Loftus's motion for reconsideration and granted, in part, Bybee's motion for reconsideration. Specifically, the magistrate court granted Bybee's request that the child support award be subject to immediate and automatic wage withholding and that a person with a valid driver's license approved by the parent picking I.L. up could transport I.L. for visitation exchanges. It denied all of Bybee's other requests.

Loftus appealed. The district court, on intermediate appeal, affirmed the magistrate court on all issues except the attorney fees request. On that issue, the district court found the magistrate court erred by relying solely on the income differential and not considering the factors set forth in Idaho Code § 32-705.[3] Loftus appealed.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id.* Thus, we review the magistrate court's

---

[3] Bybee does not challenge this ruling on appeal.

3

findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

"Child custody determinations are committed to the sound discretion of the magistrate judge." *Bartosz v. Jones*, 146 Idaho 449, 453, 197 P.3d 310, 314 (2008). Absent an abuse of discretion, the trial court's child custody determination will not be overturned. *Firmage v. Snow*, 158 Idaho 343, 347, 347 P.3d 191, 195 (2015). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

When the trial court's decisions affect children, the best interests of the child is the primary consideration. *Firmage*, 158 Idaho at 347, 347 P.3d at 195. Consequently, in matters of child custody, "Abuse of the trial court's discretion occurs only when the evidence is insufficient to support the conclusion that the interests and welfare of the minor children would be best served by a particular custody award or modification." *Biggers v. Biggers*, 103 Idaho 550, 555, 650 P.2d 692, 697 (1982).

## III.

## ANALYSIS

Loftus argues the district court, on intermediate appeal, erred in affirming the magistrate court's first amended judgment on several issues.[4] Specifically, Loftus claims the magistrate court erred by: (1) not considering I.L.'s relationship to her half-siblings when setting the custody and visitation schedule; (2) failing to set forth a rational basis for the custody and visitation schedule regarding year round visitation, summer visitation, and holiday visitation; (3) failing to impute Bybee's historical wage and instead imputing to her minimum wage; and (4) permitting any person with a valid driver's license to transport I.L. for visitation exchanges.

---

[4] Some of Loftus's arguments on appeal implicate the magistrate court's decision on his motion for reconsideration. The standard of review for a trial court's decision on a motion for reconsideration of a decision is the same standard of review that applies to the trial court's original decision. *See Burns Concrete, Inc. v. Teton Cnty.*, 168 Idaho 442, 452, 483 P.3d 985, 995 (2020). Because the standards of review are the same, our analysis does not distinguish between the magistrate court's two decisions.

Bybee argues the district court did not err in affirming the magistrate court's order because: (1) there was little evidence of I.L.'s relationship with her half-siblings but regardless, the magistrate court considered the evidence presented and, alternatively, the issue is moot; (2) the location of Loftus's visitation and the summer visitation schedule are moot; (3) the visitation schedule regarding school year and holiday visitation is in I.L.'s best interests; (4) there was no error in not imputing to Bybee her historical hourly wage because Loftus presented no evidence that Bybee could actually earn that wage; and (5) Loftus exaggerated the risk of harm regarding anyone with a valid driver's license transporting I.L. since a parent had to approve of the person transporting I.L. Bybee also requests attorney fees.

## A. Consideration of Idaho Code § 32-717(1)(c)

Loftus argues the district court erred in affirming the magistrate court's first amended judgment. Loftus argues the magistrate court disregarded the I.C. § 32-717(1)(c) factor when it failed to consider I.L.'s relationship with her half-siblings and Loftus's obligation to those children. Specifically, Loftus takes issue with the magistrate court's statement, "I didn't hear much about [I.L.'s] relationship with [Loftus's] other children," because, Loftus argues, the magistrate court's statement ignores the evidence presented to the magistrate court regarding I.L.'s relationship with her half-siblings. Bybee argues the magistrate court did consider I.L.'s relationship with her half-siblings but did not give it the weight Loftus wished it would have and notes that appellate courts are not in a position to re-weigh the evidence.

Idaho Code § 32-717(1) sets forth a non-exhaustive list of factors to be considered by the magistrate court when determining the best interests of a child pursuant to a custody and visitation schedule. Subsection (c) requires the court to consider the "interaction and interrelationship of the child with his or her parent or parents, and his or her siblings." I.C. § 32-717(1)(c). Loftus argues the magistrate court's failure to consider I.L.'s half-siblings and Loftus's obligation to them resulted in temporary orders that made it impossible, practically speaking, for Loftus to exercise visitation. The failure to exercise that visitation, argues Loftus, was counted against him in the final judgment. Loftus argues that once he moved to Idaho Falls, his other two children had family and extracurricular activities there and by requiring Loftus to exercise all visitation in Salmon, the magistrate court did not properly account for the impact on Loftus or his other children. Loftus requested that all his visitation be exercised in Idaho Falls. This argument applied to the visitation schedule set for the school year and the summer prior to I.L.'s enrollment in kindergarten.

5

Bybee argues that these arguments are moot because I.L. started kindergarten in the fall of 2025 and once that occurred, all of Loftus's visitation will occur in Idaho Falls and he will have increased time with I.L. in the summer, so he has received the relief he has requested. We agree.

This Court will not address issues that are moot. An issue is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Farrell v. Whiteman*, 146 Idaho 604, 610, 200 P.3d 1153, 1159 (2009)). "An issue is moot if it presents no justiciable controversy, and a judicial determination will have no practical effect upon the outcome." *Id.* "Mootness also applies when a favorable judicial decision would not result in any relief." *Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006). There are three exceptions to the mootness doctrine: "(1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest." *AmeriTel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851-52, 119 P.3d 624, 626-27 (2005).

Whether the magistrate court properly considered I.C. § 32-717(1)(c) in setting the pre-kindergarten visitation schedule is moot because following I.L.'s enrollment in kindergarten, all of Loftus's visitation will take place in Idaho Falls and he will have additional visitation during the summer. Because Loftus has already received the relief he requested, even if this Court ruled in his favor on this issue, it would not result in any additional relief. *See Farrell*, 146 Idaho at 610, 200 P.3d at 1159. As the issues are moot, we will not consider them.

At oral argument, Loftus argued that the magistrate court's failure to adequately consider the I.C. § 32-717(1)(c) factor affected the other decisions it made regarding the time of visitation, the holiday schedule, and who could transport I.L. to visitation. However, we do not read the briefing to contain such an argument. Instead, the briefing demonstrates that Loftus's challenges to those decisions rest on a claim that the magistrate court did not set forth a rational basis for the schedule when the schedule is not in I.L.'s best interests. Thus, we decline to apply the argument regarding I.C. § 32-717(1)(c) to the other issues raised in the appeal.

## B.     Rational Basis

### 1.     The time of regularly scheduled visitation

Loftus argues the district court erred in affirming the magistrate court's decision that his visitation should commence on alternating weekends on Friday at 12:00 p.m. and end on Sunday

at 12:00 p.m. Loftus argues the district court erred in affirming the magistrate court's visitation schedule because his work week ends on Thursdays at 5:00 p.m., and the magistrate court did not articulate a rational basis as to why it was in I.L.'s best interests to commence Loftus's visitation on Friday at 12:00 p.m. instead of Thursday evening.

The evidence at trial demonstrated that Loftus worked as a plant shift manager for Idaho Environmental Coalition, LLC, and his work week was Monday through Thursday, 6:00 a.m. to 5:00 p.m. Loftus testified that having to pick I.L. up at 12:00 p.m. on Fridays for visitation in Salmon was sometimes a challenge because his other children were in school. Bybee testified that she was unemployed but was a student studying nursing. Bybee also testified that she had difficulty seeing in the dark, did not feel that it was safe for her to drive in the dark, and preferred that visitation exchanges occur during the daytime. Bybee testified that she has no formal restrictions on her driver's license that prevent her from driving at night and that no doctor has prohibited her from driving at night or told her she should not drive at night. Bybee further testified that sometimes the weather in the winter resulted in more challenging driving conditions. Loftus testified that Bybee said she was night blind but would nonetheless drive at night. The parties agreed that the drive time between Salmon and Idaho Falls was more than two hours but less than three hours.

The magistrate court found:

> The parties live a couple of hours apart. There is some concern about travel time, especially in the winter, for [I.L.] being in the car for a few hours one way, a few hours the other way, and how often that should happen, trying to balance that with visitation and also keeping [I.L.'s] best interest at heart.

The magistrate court then set Loftus's visitation for every other Friday from 12:00 p.m. to Sunday at 12:00 p.m., with the first visit of the month in Salmon and the second visit in Idaho Falls until I.L. begins kindergarten and then all visits will take place in Idaho Falls. The current visitation schedule states: "The receiving parent shall pick up at the beginning of their parenting time." Thus, on the weekends Loftus has visitation, he is responsible for picking up I.L. from Salmon. When I.L. is picked up from Loftus's house, Bybee is responsible for transporting I.L. back to Salmon.

The visitation schedule was again addressed at the hearing on the motions for reconsideration. Loftus again asked that his alternating weekend visitation begin on Thursday evening, end on Sunday evening, and that it take place in Idaho Falls. Bybee responded that there

was no reason to expand the visits because "the Court obviously focused on [I.L.'s] best interest" and that keeping her on the same schedule since the initiation of the temporary order was best for I.L. Bybee also argued that because Loftus does not get home from work until 6:00 p.m. on Thursday, by the time he travels to and from Salmon, he would not get back home until approximately 11:00 p.m., which would be too late for I.L. and disruptive to her schedule. Loftus responded that the distance was likely only about two and one-half hours and visitation exchanges like this were rather commonplace. He also noted there was no medical evidence presented that Bybee had any restriction on her ability to drive at night. The magistrate court denied Loftus's request to change the location or time of Loftus's alternating weekend visitation schedule.

On intermediate appeal, Loftus argued the magistrate court provided no rational basis to support the alternating weekend visitation schedule. The district court disagreed,[5] noting that the magistrate court considered the distance the parties lived from each other and the impact of travel time, especially in the winter.

The only reasons given by the magistrate court to explain why it ordered Loftus's visitation to begin on Friday at 12:00 p.m. instead of Thursday evening was its goal of limiting the amount of time I.L. spent driving in a car, "especially in the winter." However, the magistrate court did not connect the amount of time I.L. spent in a car to beginning visitation at 12:00 p.m. on Friday instead of Thursday evening. In fact, the time of visitation has no correlation to the travel time based on the evidence presented. Put another way, I.L. would spend the same amount of time in the car traveling between Loftus's and Bybee's residences regardless of whether Loftus's visitation began on Thursday evening or Friday at 12:00 p.m. Thus, that reason bears no rational relationship to the ultimate order. As to limiting the amount of time I.L. was in the car during the winter, the ultimate order similarly has no rational relationship to the stated goal because I.L. spent the same amount of time in the car driving between Salmon and Idaho Falls regardless of the season. To the extent the magistrate court was accounting for inclement driving conditions, there was no evidence presented regarding the driving conditions except Bybee's statement that winter driving conditions could be challenging.

---

[5] While we do not detail the district court's reasoning here, we note that the district court erred in relying on its personal knowledge of the road and driving conditions as a basis for affirming the magistrate court's order as courts cannot substitute their own personal knowledge as evidence in the case.

Finally, the magistrate court may have considered that the time for visitation exchange should occur during the day to accommodate Bybee's preference to not drive at night. The issue of whether Bybee had a physical limitation to driving at night as opposed to a preference was debated by the parties and the evidence was conflicting. The magistrate court made no credibility findings regarding Bybee's stated driving limitation. Bybee and Loftus both testified about the driving limitation, but the magistrate court failed to state which testimony it found more credible and thus, we are unable to ascertain which facts the magistrate court relied on to support its conclusion that I.L.'s best interests were better served by scheduling Loftus's visitation from Friday at 12:00 p.m. through Sunday at 12:00 p.m. instead of Thursday evening through Sunday evening. The magistrate court's conclusion regarding the pick-up and drop-off times do not follow from the evidence and, therefore, we cannot conclude the magistrate court reached its decision by an exercise of reason and thus, abused its discretion.

## 2. Holiday visitation

At trial, Bybee testified that she was agreeable to rotating and sharing holiday visitation for all the major holidays. Loftus testified that he would like to alternate holidays, without specifying which holidays. In its findings of fact, the magistrate court found that Bybee was "okay with the regular holiday schedule." The magistrate court then ordered that the "holiday schedule would be a standard alternating holiday schedule, including Easter, Halloween, July 4th, the week of Thanksgiving--so that Monday through Sunday the week of Thanksgiving. Then for the Christmas break it would be six days for each party starting December 23rd and going to January 3rd."

This schedule was revisited at the hearing on the motions for reconsideration. Loftus noted that the magistrate court had only awarded a limited number of federal holidays and requested all federal holidays be included in the schedule, arguing: "There's obviously a lot of holidays; and I listed, for example, Labor Day, Presidents' Day, Memorial Day, when children are off school. They're federal holidays . . . . And, Your Honor, I don't see a good reason not to include those holidays in the holiday visitation schedule." The magistrate court denied Loftus's request to include all federal holidays. On intermediate appeal, the district court affirmed the magistrate court's denial of Loftus's motion for reconsideration.

Loftus requested that holiday visitation be granted without limitation as to which holidays be included. Bybee and Loftus agreed that all major holidays should be shared. The magistrate

9

court then ordered the "standard alternating holiday schedule," but did not define that term. However, the magistrate court, in its order, awarded visitation as to some, but not all federal holidays. Loftus, on reconsideration, asked for all federal holidays, though discussing a few specifically. The magistrate court denied the request for inclusion of all holidays. There is no evidence in the record that would support awarding some but not all holidays in the visitation schedule. Since the magistrate court's limitation of holiday visitation to some but not all holidays is not supported by any evidence, we conclude that the magistrate court abused its discretion in exercising reason.

### 3. The transportation of I.L. for visitation exchanges

In Bybee's motion for reconsideration, she requested the visitation order be modified to permit any person with a valid driver's license to pick up I.L. for visitation exchanges. Loftus objected. The magistrate court granted that request but ordered the driver be approved by the parent picking up I.L. On intermediate appeal, the district court affirmed the magistrate court, concluding that because the parent would need to approve of the person picking up I.L., the condition was sufficiently narrow to ensure I.L.'s safety.

Loftus appeals, arguing it is not in I.L.'s best interests to allow "anyone with a valid driver's license" to transport I.L. because that category is too broad and includes "inherently irresponsible people." Bybee argues the district court did not err in affirming the magistrate court because the provision is narrowly tailored, and because the magistrate court found that both parties were suitable parents, it is unlikely that either of the parties would allow an inappropriate person to transport I.L.

The magistrate court did not abuse its discretion in granting Bybee's request. Bybee argued such a modification was in I.L.'s best interests because it provided more flexibility for both parties and helps ensure visitation exchanges occurred in a timely fashion. Although Loftus speculates that an inappropriate person may be selected, the magistrate court found, generally, that both parents exercised appropriate care of I.L. Based on the evidence, the magistrate court exercised reason in acting within the bounds of its discretion.

### C. The Child Support Determination

Loftus argues the magistrate court erred in imputing only the minimum wage to Bybee for child support calculations because Bybee was voluntarily underemployed, had a history of making $12.00 per hour as an advanced phlebotomist, had a certified nursing assistant (CNA) license but

10

decided not to renew it, had an associate's degree in biology, and thus, was capable of working. Bybee argues the magistrate court did not err because Bybee was a full-time student and the income which Loftus wanted to attribute to her was from 2017, and there was no evidence she could obtain that employment or that salary in Salmon. The magistrate court found there was a child support order from Washington that required Loftus to pay approximately $600 a month. The magistrate court's factual findings related to Bybee's potential income are as follows: "Right now [Bybee] is not working, and the Court finds it to be appropriate to impute her income as minimum wage." The magistrate also found, "[Loftus] started out--the Court finds that he makes $63 an hour and he does work full-time."

The amount of child support is calculated in accordance with the Idaho Child Support Guidelines. I.R.F.L.P 120(a). Idaho Rule of Family Law Procedure 120(e) sets forth definitions of income, but at issue here is the definition of potential income once a court determines that a party is voluntarily unemployed or underemployed. Idaho Rules of Family Law Procedure 120(e)(3)(A)(i) and (ii) provides:

> Determination of potential income will be made according to any or all of the following methods, as appropriate:
> (i)     Determine employment potential and probable earnings level based on the parent's work history, qualifications, and job opportunities and earnings levels in the community.
> (ii)    Where a parent is a student, potential monthly income during the school term may be determined by considering student loans proceeds from any source that are distributed to the student and are used for expenses other than education.

At the hearing on the motions for reconsideration, Loftus asked the magistrate court to reconsider Bybee's income, arguing that Bybee could have renewed her CNA license and then would have income that Loftus estimated to be about $28,000.00. Loftus also argued that wages in Salmon were higher than minimum wage and asked that $12.00 per hour be imputed to Bybee. Bybee objected, arguing that there was no evidence before the magistrate court to allow the magistrate court to impute anything other than minimum wage because, "The Court can't just assume there's jobs available. Evidence has to be presented." The magistrate court declined to reconsider the imputed minimum wage, and that order was affirmed on intermediate appeal.

Here, the magistrate court's determination to impute minimum wage cannot be tied to, nor did the magistrate court reference, which factor(s) set forth in I.R.F.L.P. 120(e)(3)(i) or (ii) was employed in making the determination. Without any reference to the rule or the factors, and with

11

the evidence supporting more than one determination, we cannot conclude the district court reached its decision by an exercise of reason and reverse the magistrate court's order imputing the minimum wage to Bybee.

**D.      Attorney Fees**

Loftus argues that Bybee should not have been awarded attorney fees in the magistrate court. The district court reversed the magistrate court's award of attorney fees to Bybee based solely on the income disparity between the parties. Neither party appealed that finding; as such, the award of attorney fees in magistrate court is not before this Court.

Bybee requests attorney fees on appeal pursuant to I.C. § 12-121. An award of attorney fees may be granted under I.C. § 12-121 and Idaho Appellate Rule 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. Loftus's appeal was not brought frivolously, unreasonably, or without foundation. Consequently, we decline to award attorney fees to Bybee. Loftus did not request attorney fees on appeal. As neither party is the prevailing party, we do not award costs.

## IV.
## CONCLUSION

Loftus's claims regarding the consideration of siblings factor in I.C. § 32-717(1)(c) and the pre-kindergarten visitation in Salmon and summer schedule are moot. The district court erred in affirming the magistrate court's order on the time of visitation, the designation of the federal holidays, and the calculation of child support. The district court did not err in affirming the magistrate court's order regarding who may transport I.L. Consequently, the order of the district court is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion. Neither party is awarded attorney fees or costs.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.

12